UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:16-cv-07328-CAS(MRWx) | Date | September 11, 2017 |
|---|---|---|---|
| Title | NORTHWEST ADMINISTRATORS, INC. V. CROWN DISPOSAL COMPANY, INC. ET AL | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| David Ballew | Paul Bauducco |

| Proceedings: | PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Filed August 8, 2017, dkt. 44) |
|---|---|

## I. INTRODUCTION

On May 31, 2016, plaintiff Northwest Administrators, Inc. ("Northwest"), the administrator and assignee of the Western Conference of Teamsters Pension Trust Fund (the "Trust Fund"), filed this action in the Western District of Washington against defendants THF Holding Co., ("THF"), formerly known as Crown Disposal Company, Inc. ("Crown"), and CR Maintenance Services, Inc. ("CRMS"), formerly known as Community Recycling & Resource Recovery, Inc., (collectively, "defendants"). Dkt. 1. Plaintiff claims that defendants must pay their assessed withdrawal liability to the Trust Fund in the amount of $1,021,074.79 and liquidated damages in the amount of $204,214.96 together with attorney fees, costs, and interest pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). Id. The case was transferred to this Court on September 12, 2016. Dkt. 19.

On August 8, 2017, plaintiff filed the instant motion for summary judgment. Dkt. 44 ("Motion"). On August 21, 2017 defendants filed their opposition, dkt. 45 ("Opp'n"), and plaintiff filed its reply on August 28, 2017, dkt. 38 ("Reply"). The Court held a hearing on September 11, 2017. Having carefully considered the evidence and the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-07328-CAS(MRWx) | Date | September 11, 2017 |
| Title | NORTHWEST ADMINISTRATORS, INC. V. CROWN DISPOSAL COMPANY, INC. ET AL | | |

## II.  BACKGROUND

Unless otherwise noted, the following facts are undisputed.

The Trust Fund is an unincorporated association operating as a multiemployer trust fund pursuant to Section 302 of the Labor Management Relations Act of 1947.  Dkt. 44-4, Ditter Decl. ¶ 3.[1]  The Trust Fund provides retirement and other benefits to eligible participants.  Id. at ¶ 6.  There are approximately 4,800 employer accounts with approximately 75 separate Teamster Local Unions throughout the 13 Western States participating in the Trust Fund.  Id. at ¶ 9.  The Trust Fund is governed by a Board of Trustees comprised of an equal number of employer and union trustees.  Id. at ¶ 4.  The Board of Trustees is governed by the Western Conference of Teamsters Pension Trust Agreement (the "Trust Agreement") and Declaration of Trust.  Id. at ¶ 5, Ex. A.  The Trust Fund is covered by ERISA and the MPPAA, which requires that employers withdrawing from multiemployer pension plans pay the unfunded vested benefits attributable to the withdrawing employers' participation.  Ditter Decl. ¶ 5.  The Trust Agreement also provides rules and procedures for employer withdrawal liability, which restate and supplement the MPPAA.  Id. at ¶ 11, Ex. A.

Defendants previously operated waste management, collection, sorting, recycling, composting, and disposal businesses with facilities in Sun Valley, California.  Dkt. 45-6, Richardson Decl. ¶ 3.[2]  Crown employed drivers who were members of Local 396 of the International Brotherhood of Teamsters (the "Local").  Id. at ¶ 5.  Crown was a party to a collective bargaining agreement with the Local effective from October 1, 2012 through September 30, 2017 (the "CBA").  Ditter Decl., ¶ 12, Ex. B.  Under the CBA, Crown was required to pay monthly contributions to the Trust Fund at specific rates on behalf of employees working in the bargaining unit represented by the Local.  Id. at ¶¶ 11–12.  Crown and the Local were also parties to an Employer–Union Pension Certification.  In entering into the Pension Certification, employers and unions agreed to be bound by the Trust Agreement.  Id. at ¶¶ 13–14, Ex C.

---

[1] Donald Ditter ("Ditter") is the Area Manager of Northwest based in Seattle, Washington.  Ditter Decl., ¶ 2.
[2] John Richardson ("Richardson") is the Vice President of both THF and CRMS.  Richardson Decl. ¶ 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:16-cv-07328-CAS(MRWx) | Date | September 11, 2017 |
|---|---|---|---|
| Title | NORTHWEST ADMINISTRATORS, INC. V. CROWN DISPOSAL COMPANY, INC. ET AL | | |

Defendants contend that Crown entered into the CBA in June 2013 based on omissions of fact and misrepresentations by the Local. Opp'n at 2, 5; Richardson Decl. ¶¶ 5–10. Richardson, who served as Crown's principal negotiator, states that at no time during the CBA negotiations was there any discussion of withdrawal liability; and Crown would not have offered wages and benefits significantly higher than the prevailing rates had there been such a discussion. Id. at ¶¶ 7, 10. Consequently, defendants argue that the CBA is void due to fraud or a mutual mistake of material fact. Opp'n at 6.

When Crown sold its waste management businesses on March 4, 2015, Crown terminated its employees and withdrew from the Trust Fund. Ditter Decl. ¶ 3; Richardson Decl. ¶ 11. On December 10, 2015, Northwest sent Crown a certified letter notifying the company of an assessment of its withdrawal liability in the amount of $1,021,074.79 for accounts under its common control.[3] Ditter Decl. ¶ 20, Ex. D. The letter contained a detailed description of how the withdrawal liability was calculated and provided an amortization schedule showing the number and amount of each payment required to liquidate the withdrawal liability according to a monthly payment schedule. Id. The letter informed Crown of its right to request a review by the Trust Fund of any item related to the determination of withdrawal liability or the payment schedule. Ditter Decl. ¶ 21, Ex. D. In addition, the letter advised Crown of its right to dispute any determination made by the Trust Fund with respect to its withdrawal liability by initiating arbitration with 60 days. Id. The letter also informed Crown that even if it requested review or initiated arbitration, it must still make withdrawal liability payments during the pendency of any request for review or arbitration. Id.

On March 8, 2016, Crown requested a review of the assessment. Id. at ¶ 23, Ex. E. By letter dated March 21, 2016, Ditter demanded withdrawal liability payments from Crown for February and March 2016, which were already late. Id. at ¶ 23, Ex. F. Ditter also informed Crown that if these payments were not received by March 31, 2016, the Trust Fund would commence legal action, which would result in Crown also being held

---

[3] Businesses "under common control" are treated as a single employer for purposes of withdrawal liability. See 29 U.S.C. § 1301(b)(1); Bd. of Trustees of W. Conference of Teamsters Pension Tr. Fund v. H.F. Johnson Inc., 830 F.2d 1009, 1013 (9th Cir. 1987). Defendants do not dispute that Crown and CRMS are under common control and therefore jointly and severally liable for each other's withdrawal liability. Dkt. 44-8, Ballew Decl. ¶ 2, Ex. A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-07328-CAS(MRWx) | Date | September 11, 2017 |
| Title | NORTHWEST ADMINISTRATORS, INC. V. CROWN DISPOSAL COMPANY, INC. ET AL | | |

liable for liquidated damages, interest, attorneys' fees, and costs. Id. On May 10, 2016, Michael M. Sander, the administrative manager for Northwest, notified counsel for Crown that its request for review had been denied such that the company's opportunity for administrative review of the withdrawal liability assessment had been extinguished. Id. at ¶ 25, Ex. G. Following this denial, Crown did not initiate arbitration pursuant to 29 U.S.C. § 1401. Id. at ¶ 26. To date, Crown has not made any payments to the Trust Fund on its assessed liability. Id. at ¶ 26.

## III. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL       'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-07328-CAS(MRWx) | Date | September 11, 2017 |
| Title | NORTHWEST ADMINISTRATORS, INC. V. CROWN DISPOSAL COMPANY, INC. ET AL | | |

### B. MPPAA Withdrawal Liability

"ERISA, the federal comprehensive private employee benefits statute, includes provisions designed 'to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans.'" Resilient Floor Covering Pension Tr. Fund Bd. of Trustees v. Michael's Floor Covering, Inc., 801 F.3d 1079, 1088 (9th Cir. 2015) (quoting Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 720 (1984)). "Congress enacted [the] MPPAA . . . because it found that existing legislation 'did not adequately protect plans from the adverse consequences that resulted when individual employers terminate[d] their participation in, or withdr[e]w from, multiemployer plans.'" Flying Tiger Line v. Teamsters Pension Trust Fund, 830 F.2d 1241, 1243 (3d Cir. 1987) (quoting R.A. Gray, 467 U.S. at 722).

Under the MPPAA, an employer who withdraws from a defined benefits plan must pay the plan a proportionate share of the plan's unfunded vested benefits. 29 U.S.C. § 1381. The plan sponsor must "(1) determine the amount of the employer's withdrawal liability, [¶] (2) notify the employer of the amount of the withdrawal liability, and [¶] (3) collect the amount of the withdrawal liability from the employer." Id. § 1382. No later than 90 days after the plan assesses liability, "the employer . . . (I) may ask the plan sponsor to review any specific matter relating to the determination of the employer's liability and the schedule of payments, (ii) may identify any inaccuracy in the determination of the amount of unfunded vested benefits allocable to the employer, and (iii) may furnish any additional relevant information from the plan sponsor." Id. § 1399(b)(2)(A). "After a reasonable review of any matter raised, the plan sponsor shall notify the employer of . . . (I) the plan sponsor's decision, (ii) the basis for the decision, and (iii) the reason for any change in the determination of the employer's liability or schedule of liability payments." Id. § 1399(b)(2)(B).

Then, within prescribed time limits, either party may initiate arbitration; and "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan" over withdrawal liability as determined under the enumerated statutory provisions "shall be resolved through arbitration." Id. § 1401(a)(1). If an employer fails to demand arbitration, the assessment becomes "due and owing" on the schedule provided by the plan sponsor. Id. § 1404(b)(1). In the event of an employer default "a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-07328-CAS(MRWx) | Date | September 11, 2017 |
| Title | NORTHWEST ADMINISTRATORS, INC. V. CROWN DISPOSAL COMPANY, INC. ET AL | | |

liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." Id. § 1399(c)(5). In addition, "[i]f an employer fails to initiate arbitration, the employer waives the opportunity to assert any defenses that could have been raised before the arbitrator." Pension Plan for Pension Trust Fund for Operating Engineers v. Weldway Const., Inc., 920 F.Supp.2d 1034, 1044 (N.D. Cal. 2013) (citing Teamsters Pension Tr. Fund-Bd. of Trustees of W. Conference v. Allyn Transp. Co., 832 F.2d 502, 505 (9th Cir. 1987)).

"Under ERISA, the award of attorneys' fees to a pension plan is mandatory in all actions to collect delinquent contributions." Lads Trucking Co. v. Bd. of Trs. of W. Conference of Teamsters Pension Trust Fund, 777 F.2d 1371, 1374 (9th Cir. 1985) (citing 29 U.S.C. § 1132(g)(2)). "This mandatory attorneys' fees provision applies in all actions to collect delinquent contributions owed under § 1145, including actions to collect unpaid employer withdrawal liabilities." Id. at 1374.

## IV. DISCUSSION

Plaintiff has made a prima facie showing that the Trust Fund is entitled to withdrawal liability. Plaintiff provided evidence that Crown withdrew from the Trust Fund on March 4, 2015 thereby triggering withdrawal liability under the MPPAA. Plaintiff also provided evidence that it has complied with the MPPAA's procedural requirements. Plaintiff notified Crown of its withdrawal liability assessment in the amount of $1,021,074.79 and advised the company that it had the option of challenging the calculation by requesting review of the assessment and thereafter by demanding arbitration. When Crown's request for review of the assessment was denied, Crown did not initiate arbitration. Crown also failed to make any installment payments on its withdrawal liability obligations. Plaintiff therefore accelerated the entire withdrawal liability, which became immediately due and payable with interest and liquidated damages. Accordingly, plaintiff has satisfied its initial burden and should be granted summary judgment unless defendants can show they have defense or there is a genuine issue of material fact.

Defendants argue there is a dispute of fact as to whether the CBA is void due to fraudulent inducement or a mutual mistake of material fact. Opp'n 4–6. They contend that Crown entered into the CBA based on omissions of fact and misrepresentations by the Local. Opp'n at 5. Specifically, Richardson states that at no time during the CBA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-07328-CAS(MRWx) | Date | September 11, 2017 |
| Title | NORTHWEST ADMINISTRATORS, INC. V. CROWN DISPOSAL COMPANY, INC. ET AL | | |

negotiations was there any discussion of withdrawal liability; and Crown would not have offered wages and benefits significantly higher than the prevailing rates had there been such a discussion. Richardson Decl. ¶¶ 7, 10. Defendants argue that because the termination of the CBA and Crown's corresponding withdrawal from the Trust Fund is the basis for plaintiff's claim for withdrawal liability, this dispute of fact should preclude summary judgment. See Opp'n 4–6.

This argument fails for two reasons. First, it is undisputed that defendants did not seek to arbitrate any dispute regarding the withdrawal liability assessment. Pursuant to 29 U.S.C. § 1401(a)(1), "[a]ny dispute over withdrawal liability as determined under the enumerated statutory provisions shall be arbitrated." Allyn Transp., 832 F.2d at 504. "If an employer fails to initiate arbitration, the employer waives the opportunity to assert any defenses that could have been raised before the arbitrator." Weldway Const., 920 F.Supp.2d at 1044; see also Northwest Administrators, Inc. v. Northern Distribution, LLC, 2011 WL 252946, *1 (W.D. Wash. Jan. 26, 2011) ("By failing to initiate arbitration within the sixty-day period set forth in § 1401(a)(1), defendant waived any defenses or objections that could have and should have been resolved by the arbitrator, including the existence of a withdrawal and the determination of liability.") To the extent defendants' claims of fraudulent inducement and mutual mistake of fact should have been raised in arbitration, this defense is now waived and cannot preclude summary judgment.

Second, even if there is a factual dispute regarding the parties' expectations and conduct when negotiating the CBA, defendants' allegation of fraudulent inducement is not a valid defense to withdrawal liability. The Ninth Circuit Court of Appeals has long held that an employer's "claim that a promise to make contributions was fraudulently induced is not a legitimate defense to the trust fund's action to recover delinquent contributions." Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 775 (9th Cir. 1986), citing Southern California Retail Clerks Union & Food Employers Joint Pension Trust Fund v. Bjorklund, 728 F.2d 1262, 1266 (9th Cir. 1984). Although a trust fund is a third-party beneficiary under a CBA and ordinarily would be subject to any contract defenses available against the contracting parties themselves, "traditional contract law does not apply with full force in actions brought under [ERISA] to collect delinquent trust fund contributions." Id. at 769. This is because, "[i]n recognition of the fact that millions of workers depend upon employee benefit trust funds for their retirement security, Congress and the courts have acted to simplify trust fund collection actions by restricting the availability of contract defenses." Id. at 773. Defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| | | | |
|---|---|---|---|
| Case No. | 2:16-cv-07328-CAS(MRWx) | Date | September 11, 2017 |
| Title | NORTHWEST ADMINISTRATORS, INC. V. CROWN DISPOSAL COMPANY, INC. ET AL | | |

therefore cannot rely on fraudulent inducement as a defense. Defendants' claim of mutual mistake is similarly unavailing. See id. at 775 (the "argument that there was no 'meeting of the minds' is little more than a restatement of the fraudulent inducement defense" and does not constitute a legitimate defense).

Accordingly, the Court finds that defendants have not presented a viable defense, there is no genuine dispute as to any material fact, and therefore plaintiff's motion for summary judgment is **GRANTED**.

Plaintiff requests $1,021,074.79 in assessed withdrawal liability and liquidated damages in the amount of $204,214.96. Motion at 18. These amounts are undisputed. Plaintiff indicates that attorneys' fees, costs, and interest will be calculated at the conclusion of the case. Id. In their opposition, defendants argue that plaintiff's calculation of prejudgment interest is "grossly overstated." Opp'n at 1, 6–8. Plaintiff concedes error. Reply at 4–5. Accordingly, plaintiff is directed to submit a revised calculation of interest alongside its calculation of attorneys' fees and costs.

## V. CONCLUSION

Based on the foregoing, the Court **GRANTS** the motion for summary judgment and **AWARDS** plaintiff withdrawal liability in the amount of $1,021,074.79 and liquidated damages in the amount of $204,214.96. Plaintiff shall submit a calculation of attorney fees, costs, and interest no later than October 9, 2017. Defendants may respond to the calculation no later than October 16, 2017, and Plaintiff may reply no later than October 23, 2017.

IT IS SO ORDERED.

| | 00 | : | 01 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |